(C.D. 4326)

OXFORD INTERNATIONAL CORP. *v.* UNITED STATES

United States Customs Court, First Division

(Decided January 19, 1972)

*Allerton deC. Tompkins* for the plaintiff.

*L. Patrick Gray, III*, Assistant Attorney General (*Steven P. Florsheim*, trial attorney), for the defendant.

WATSON, Judge: This protest places in issue the classification of certain cables imported for use with the caliper brakes of bicycles. The merchandise was imported in 1966 and classified as other parts of bicycles pursuant to item 732.36 of the Tariff Schedules of the United States, dutiable at the rate of 30 per centum ad valorem. Plaintiff claims the merchandise is properly classifiable pursuant to item 642.20 of said tariff schedules as wire cables fitted with fittings or made up into articles, dutiable at 19 per centum ad valorem.

The relevant general headnotes and statutory provisions are as follows:

9. Definitions. For the purposes of the schedules, unless the context otherwise requires—

\* \* \* \* \* \* \*

(f) the terms "of", "wholly of", "almost wholly of", "in part of" and "containing", when used between the description of an article and a material (e.g., "furniture of wood", "woven fabrics, wholly of cotton", etc.), have the following meanings:

(i) "of" means that the article is wholly or in chief value of the named material;

\* \* \* \* \* \* \*

10. General Interpretative Rules. For the purposes of these schedules—

\* \* \* \* \* \* \*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it; but, in applying this rule of interpretation, the following considerations shall govern:

(i) a superior heading cannot be enlarged by inferior headings indented under it but can be limited thereby;

\* \* \* \* \* \* \*

(f) an article is in chief value of a material if such material exceeds in value each other single component material of the article;

\* \* \* \* \* \* \*

(ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part.

\* \* \* \* \* \* \*

Schedule 6, Part 3:

Part 3 headnotes:

1. For the purposes of this part—

(a) "wire" is deemed to be a base-metal product which conforms to the respective cross-sectional measurements for base-metal wires in part 2, whether or not conforming otherwise to the

specifications set forth therein. In the provisions of this part which describe wire in terms of its cross-sectional dimension, the dimension specified is that of such wire without its metal coating, if any.

\*     \*     \*     \*     \*     \*     \*

Subpart B:

Subpart B headnote:

1. This subpart does not cover—
   (i) articles of precious metal or rolled precious metal, or articles coated or plated with precious metal;
   (ii) insulated electric conductors or uninsulated electric conductors specially provided for in part 5 of this schedule;
   (iii) textile articles of metallic yarns;
   (iv) reinforced or laminated plastics (see part 12A of schedule 7);
   (v) asbestos, ceramics, or glass products containing a wire netting (see schedule 5); or
   (vi) building papers or felts reinforced with wire (see part 4B of schedule 2).

\*     \*     \*     \*     \*     \*     \*

Strands, ropes, cables, and cordage, all the foregoing, of wire, whether or not cut to length, and whether or not fitted with hooks, swivels, clamps, clips, thimbles, sockets, or other fittings or made up into slings, cargo nets, or similar articles:

\*     \*     \*     \*     \*     \*     \*

| 642.20 | Fitted with fittings, or made up into articles | 19% ad val. |
|---|---|---|

Schedule 7, Part 5, Subpart C:

Parts of bicycles:

\*     \*     \*     \*     \*     \*     \*

| 732.36 | Other parts of bicycles | 30% ad val. |
|---|---|---|

Six exhibits representing the importations in question were placed in evidence together with a U. S. Customs Laboratory report indicating that the wire portion of each of the exhibits consists of twisted steel wires, not stainless and, in the case of exhibits 2, 3, and 5, also zinc coated. The samples of the importation are essentially the same, consisting of varied lengths of wire cable encased in plastic covering and fitted at either end with pieces known as barrel and ferrule ends.

The parties have stipulated that the merchandise in question does not consist of precious metal or rolled precious metal or articles coated or plated with precious metal. Defendant has further conceded that the subject merchandise "meets the definitional requirement of Headnote 1(a) of Schedule 6, Part 3, and is not excluded from classification under Subpart B of Schedule 6, Part 3, by virtue of Headnote 1 of said Subpart."

As is admitted by defendant, there is no doubt that the merchandise herein consists of cables. See the *Flexible Plumber Tools, Inc.* v. *United States*, 66 Cust. Ct. 330, C.D. 4210 (1971), appeal dismissed July 13, 1971). The essential question, however, is whether these cables are those described in item 642.20 of the TSUS, that is to say, whether they are fitted up with those fittings or made into those articles which were intended to be covered by that provision.

Defendant advances a number of reasons in support of its contention that the importation is not the type of cable provided for in the claimed item. Defendant asserts that the fittings with which the importation is supplied are not of the type enumerated in the major heading of the claimed tariff provision and further that the covering is not a type of fitting envisioned by this provision. Defendant also argues that there has been no showing that the importation is "of wire" in the sense that its component material of chief value is wire.

We are of the opinion that the importation, as constituted, does come within the claimed provision and the objections raised by defendant are not sufficient to exclude it therefrom. It is already clear from the case of *Flexible Plumber Tools, Inc.* v. *United States, supra,* that the descriptive exemplars in the superior heading are not exact limitations. If that were the case, control cables would not easily come within this provision. It is the full common meaning of the term "cable" as set out in the *Flexible Plumber Tools, Inc.* case to which we adhere and the importations come within that term. In that case the court discussed the term "cables" as follows:

> The following definition of "cable" in *Webster's Third New International Dictionary of the English Language* (Unabridged, 1963) is referred to in the briefs of both parties:
>
>> cable 1a: strong rope; *esp:* a rope 10 or more inches in circumference b: a cable-laid rope c: a wire rope or metal chain of great strength used esp. for hauling, for securing a ship to an anchor, or for supporting the rods and roadway of a suspension bridge d: a wire or wire rope by means of which force is exerted to control or operate a mechanism * * *.
>
> The Government contends, in substance, that the term "cable" as used in the statute excludes the type specified in 1d; while

plaintiff contends that the statute includes the control type cable covered by 1d. We agree with plaintiff.

### 2.

The uncontroverted testimony of plaintiff's witness establishes that one of the uses of the "snake cable" was as a control cable to operate an odometer, which registers the footage on a sewer machine. In our opinion, control cable (whether or not fitted with fittings) is a type of "cable" intended by Congress to be covered by the superior heading to item 642.16, TSUS. Defendant has not directed our attention to any legislative history, rule of statutory construction, or authority which, in our opinion, supports the more restrictive construction urged.

It appears to us that the fittings with which the importations are supplied fall well within the range suggested by the exemplars in the superior heading so as to be "other fittings". They are similar to "hooks, swivels, clamps, clips, thimbles, sockets" in that they serve a connective and fastening purpose.

The record herein establishes that the importations are articles within our understanding of the phrase "made up into articles" in the language of item 642.20. The testimony of plaintiff's president and the exhibits themselves indicate they are complete and separate articles of commerce, which though destined to function as parts of bicycles are in their form as imported, individual articles. They are ready for use as brake cables and are bought and sold as individual items.

The plastic covering on the importation comes within our understanding of the claimed provision either as some other fitting or as an addition, inconsequential from a tariff standpoint, which must be permitted if the provision's scope is indeed to extend to cables when made up into articles.

This relates to our understanding of the claimed provision as covering cables whose composition is wire, that is to say, made of wire as opposed to fiber for example, and not necessarily cables which are in chief value of wire. Logically, if the tariff schedules envision the fashioning of cables into articles, there is always the possibility of non-wire components. In addition, it is entirely possible that a particularly complex fitting may have a value greater than the length of cable to which it is attached. In all, the particular construction of the provision for cables, allowing as it does for the addition of fittings and the fabrication of cable into complete articles, suggests that it would be unjustifiably restrictive to demand that the wire always be the component of chief value. This provision is one in which the context requires that the term "of", used between the description of an article and a material, refers to general composition and not chief

value of the named material as in the general rule. (See General Headnotes and Rules of Interpretation 9(f)(i).) In our view, the legislative concern in this provision is that the essential force transmitting or weight supporting component be wire. That is clearly the case with the importations herein.

In sum, we find that the articles imported are cables which come within the scope of the provision in item 642.20 for cables fitted with fittings or made up into articles. That provision is more specific than the provision for parts of bicycles and should prevail in accordance with General Interpretative Rule 10(ij).

Judgment will issue accordingly.